UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-294-H

NICK LANKFORD                                                          PLAINTIFF

V.

RADIOSHACK CORPORATION                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Nick Lankford ("Lankford"), who is legally blind, has sued his former employer, RadioShack Corporation ("RadioShack"), for disability discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010-.045. ("KCRA"). Discovery is now complete and RadioShack has moved for summary judgment.

The viability of this claim depends upon whether Lankford is qualified to perform his job, even with his disability, and whether RadioShack has failed to offer the necessary accommodations to help him. The Court does not find sufficient evidence from which a reasonable jury could answer either question "yes."

I.

Lankford, a twenty-five-year old male, suffers from an optic neuropathy known as Leber's Disease. Leber's disease is a rare condition which causes blurred vision and the loss of central vision. In Lankford's case, the condition has left him with no central vision and 20/1000 peripheral vision even with corrective lenses. Lankford is designated as legally blind.

In 2000, Lankford began to work for RadioShack as a sales associate. He was an

exceptionally successful salesman.  Accordingly, three years later, he was promoted to store manager at the Oxmoor Mall ("Oxmoor") location in Louisville, Kentucky.  He began the position as store manager on September 1, 2003.

Both parties agree that as the store manager, Lankford was responsible for supervising, training and scheduling employees, implementing sales goals, controlling the inventory and merchandising the Oxmoor location.  In September of 2003, Jeff Petcheak ("Petcheak"), the District Manager, was responsible for ensuring that Lankford fulfilled these duties.  Petcheak periodically conducted performance reviews of the store and issued written appraisal reports. According to Petcheak's reports, Lankford succeeded in improving the store's sales figures from the beginning.  In November of 2003, Oxmoor's YTD earnings had increased by $9800 over the previous year with a 27.6% increase in gross sales.  Lankford received high ratings for his sales and for his relationships with customers.

According to RadioShack, however, Lankford did not enjoy similar success in merchandising the store.  Merchandising is a term used by RadioShack to refer to a manager's duties that relate to the organization and appearance of an individual store.  To fulfill his merchandising duties, a manger, such as Lankford, has to lay out a store in accordance with what is referred to as a "plan-o-gram."  A plan-o-gram is a map of the store dictating where specific merchandise should be placed to maximize sales.  At the same time, a manager has to ensure that products be properly priced, that the stores be clean, and that the floor and back room be organized and neat.  From the beginning, RadioShack believed that Lankford failed in each of these duties.

Petcheak conducted his first appraisal of the Oxmoor location while it was under

2

Lankford's management on October 23, 2003.  On that date, he described the store as being in "much disarray."  He called in a group of managers to restore the location to an acceptable condition and suggested that Lankford take specific steps to eradicate the problem.  Thereafter, Petcheak hired an assistant manager, Lisa Linton ("Linton"), to help Lankford with merchandising.  Even with her help, the store consistently received mediocre reviews on its appearance and organization.  After Linton left the store in January, the store earned the lowest possible merchandising scores.  Norman Brimm ("Brimm"), the district manager at the time, found merchandise on the floor and in the aisles; he found boxes all over the floor; and he found the back room door open with merchandise laying around everywhere.  He also found that Lankford had deviated from the plan-o-gram designated for the store.  Brimm testified in his deposition that the store looked like "we were going out of business."

Based on these concerns, Brimm decided that Lankford was not qualified to manage the Oxmoor location, which was a heavily trafficked store.  In late February of 2004, Brimm offered Lankford two options.  He told him that he could work as the manager in a less popular location in LaGrange; or he could return to his position as a sales associate.  Lankford found both of these alternatives unacceptable.  On February 21, 2004, Lankford tendered his resignation.  This lawsuit followed.

## II.

The Americans with Disabilities Act (the "ADA") prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 2112(a).[1]  Lankford claims that he suffered discrimination because he is

---

[1]Although Lankford asserts his cause of action under the KRCA, the KCRA is interpreted consonant with the Americans with Disabilities Act ("ADA").  *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001).

legally blind.  Legal blindness can qualify as a disability under the ADA and the KCRA.  *See.*

*e.g.*, *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006)

(analyzing the ADA).  Because Lankford has presented no direct evidence of discrimination, to

establish a prima facie case Lankford must show: (1) he was "disabled;" (2) he was otherwise

qualified to perform the essential functions of the job; (3) he suffered an adverse employment

action (4) his employer knew or had reason to know of his disability; and (5) either the position

remained open or a non-disabled person replaced him.  *Brenneman v. Medcentral Health Sys.,*

366 F.3d 412, 417 (6th Cir. 2004) (citation omitted); *see also Martin v. Barnesville Exempted*

*Village Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000).

A "disability" means either (1) a physical or mental impairment that substantially limits

one or more of the major life activities of an individual; (2) a record of such an impairment; or

(3) being regarded as having such an impairment.  *Moorer v. Baptist Memorial Health Care*

*System*, 398 F.3d 469, 479 (6th Cir. 2005).  Lankford alleges that his impaired vision, a physical

impairment, substantially limited the major life activity of working.[2]  Here, neither party disputes

that Lankford's impaired vision constitutes a disability within the meaning of the KCRA.

Although Lankford does not suffer from total blindness, his vision is profoundly impaired.  Even

with corrective lenses, Lankford can have no better than 20/1000 vision and can have no central

vision.  This evidence is sufficient to establish that Plaintiff suffered from a "disability" under

the KCRA because his visual impairment, which cannot be corrected, likely renders him unable

to work in a broad class of jobs.  *Cf. Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488 (1999)

---

[2]There is no question that working can qualify as a "major life activity" under the ADA and the KCRA.
*See Moorer*, 398 F.3d at 479 ("a major life activity means 'functions such as caring for oneself, performing manual
tasks, walking, seeing, hearing, speaking, breathing, learning, and  working'") (quoting 29 C.F.R. § 1630.2(i)).

(plaintiffs were not disabled within the meaning of the ADA because they could fully correct their vision impairments with corrective lenses).

### III.

The central issue in this case is whether Lankford was otherwise qualified to perform the essential functions of the job. When determining whether a person is a "qualified individual" under the ADA, courts undertake a two-part inquiry and consider whether, at the time of the adverse action, the employee: (1) satisfies the employer's legitimate selection criterion for the job; and (2) is capable of performing the job's essential functions with or without reasonable accommodation from an employer. *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999) (citation omitted); see also 29 C.F.R. § 1630.2(m).

### A.

RadioShack argues that Lankford was incapable of performing the "essential functions" of his managerial position. Specifically, RadioShack alleges that Lankford did not meet the store's merchandising requirements. Lankford concedes that the store was occasionally in a state of disarray. However, he argues that merchandising was not an essential function of his job and that he would have been capable of meeting the merchandising requirements if he had been given reasonable accommodations.

The first question that the Court must address, therefore, is whether merchandising according to RadioShack's specifications is an essential function of Lankford's position as a store manager. In general, an employer is entitled to define the job in question, in terms of both its essential functions and the qualifications required. *See Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004) ("[W]e are reluctant to allow employees to define the

5

essential functions of their positions based solely on their personal viewpoint and experience");

*Webster v. Methodist Occupational Health Centers, Inc.*, 141 F.3d 1236 (7th Cir. 1998).

Lankford asserts that facilitating sales is the only essential function for a store manager;

Lankford's opinion, however, is not determinative.  The focus of the analysis is whether an

employer actually requires all employees in a particular position to perform the same essential

job functions.  *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 674 (7th Cir. 1998) (citations

omitted).

　　　　Here, RadioShack does require all of its store managers to merchandise retail stores

according to a common scheme.  RadioShack uses what is referred to as a "plan-o-gram" to

merchandise a store.  The plan-o-gram lays out the required format of each store.  In addition to

the plan-o-gram scheme, RadioShack policy dictates that products be properly priced, that the

stores be clean, and that the floor and back room be organized and neat.  The merchandising

requirements are designed to promote uniformity, making it easier for sales associates and

customers to navigate each retail outlet.  RadioShack explains that poor merchandising may lead

to theft, poor sales and damaged or destroyed products.  Lankford has presented no evidence that

the merchandising requirements are fictitious.  To the contrary, the evidence is that the

requirements are real.  Regional managers routinely inspect each retail store and rate its

merchandising according to a numerical scale.  The store manager is responsible for meeting all

of these merchandising requirements and failure to comply can result in demotion or firing.

　　　　Because RadioShack requires all of its store managers to merchandise their stores and

because merchandising is job-related and consistent with business necessity, the Court concludes

that merchandising is an essential function of Lankford's position within the meaning of the

ADA.

## B.

Since merchandising constitutes an essential function of Lankford's position under the ADA, Lankford has the burden of proving that he could have properly merchandised the store with or without reasonable accommodation. *Bratten*, 185 F.3d at 632. Lankford has not presented evidence sufficient to support either proposition.

Lankford cannot establish that he was capable of properly merchandising the store without accommodation from his employer. At the time Lankford took over as manager in September of 2003, the merchandising of the Oxmoor location met RadioShack's standards.[3] By October of 2003, however, the store had fallen into a state of disorder. During a routine visit to the store on October 23, 2003, Petcheak, the district manager, described the store as being in "much disarray." He called in a group of managers to restore the location to an acceptable condition. Thereafter, he hired an assistant manager, Linton, whose job was to merchandise the store on Lankford's behalf. Even with her help, the store repeatedly received mediocre reviews on its appearance and organization. After Linton left the store in January, the store earned the lowest possible merchandising scores. Brimm, the district manager at the time, found merchandise on the floor and in the aisles; he found boxes all over the floor; and he found the back room door open with merchandise laying around everywhere. Accordingly, although sales improved during Lankford's stint as manager, Lankford cannot establish that he was capable of meeting the merchandising requirements of the position without accommodation.

---

[3] Lankford alleges that the store was not properly merchandised when he began work. However, at the time he took control of the store, he signed a statement attesting that the store had been perfectly merchandised. Moreover, he concedes that there were only two minor imperfections at that time.

Lankford cannot show that he could have performed his job with a reasonable accommodation either.  The initial burden of proposing an accommodation and of showing that the accommodation is reasonable is on the employee.  *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 102 (Ky. Ct. App. 2000) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996)).  In this case, Lankford has proposed two accommodations, neither of which satisfies his burden.

First, Lankford claims that he could have performed his job if RadioShack had allowed him to merchandise products in numerical order.  According to Lankford, in such circumstances he would not have had to rely on his eyesight to locate items and therefore he would have been able to retrieve them more quickly for customers.  Under the ADA, Lankford bears the burden of establishing that he is capable of performing the essential functions of the job with the proposed accommodation. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996).  As discussed in Subsection A, courts have been reluctant to allow employees to define the essential requirements of any job.  Responsibility for the plan-o-gram layout is a valid and reasonable requirement for any store manager.  Moreover, Lankford's proposal would have addressed only a small portion of his employer's legitimate concerns.  Although merchandising by number may have helped him locate items quickly for customers, Lankford has failed to prove that his proposal would have helped him to make the appearance of the store clean and orderly or to keep the aisles clear of boxes and debris.

Second, Lankford claims that he could have performed his job if RadioShack had hired a an assistant manager to merchandise the store after Linton's departure in January of 2004.  It is true that Lankford's store received better merchandising ratings while Linton was responsible for

8

organizing the store. However, the ADA does not require an employer to hire additional people or to assign tasks to other employees in order to enable a disabled employee to perform the essential functions of his position. *See, e.g., Hatchett v. Philander Smith College*, 251 F.3d 670, 675 (8th Cir. 2001) ("[A]n employer is not required to hire additional employees or assign those tasks that the employee could not perform to other employees."). Merchandising was an essential function of Lankford's position as manager. As a matter of law, RadioShack had no obligation to hire another employee to perform that function for him. In that regard, Lankford's proposed accommodation is unreasonable. As a result, RadioShack is entitled to summary judgment on Lankford's claim of unlawful demotion.

III.

In his Response to Defendant's Motion for Summary Judgment, Lankford appears to assert a claim against RadioShack for failing to provide reasonable accommodation. A failure to accommodate claim is distinct from a claim of unlawful termination or demotion. *Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005) ("[R]aising an argument with respect to the failure to accommodate claim is insufficient to preserve the argument for appeal on the wrongful termination claim"). Lankford has not clearly pleaded failure to reasonably accommodate in his Complaint. However, regardless of the potential pleading concerns, a failure to accommodate claim, like a wrongful termination claim, requires a disabled employee to prove that he is otherwise qualified for the position. *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). For the reasons explained above, Lankford cannot prove that he is otherwise qualified for his managerial position. Therefore, RadioShack is entitled to summary judgment on this claim as well.

9

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record